UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPECIALTY NATIONAL INSURANCE
COMPANY,

          Plaintiff,

v.                                    Case No.  8:07-cv-878-33MAP

U-SAVE AUTO RENTAL OF AMERICA,
INC., et al.,

          Defendants.
_____/

**ORDER**

        This matter comes before the Court upon consideration of

Defendants Michael and Maria Kastrenakes' Motion for Summary

Judgment (Doc. # 50); Defendant U-Save Auto Rental of America,

Inc.'s Motion for Final Summary Judgment (Doc. # 51); and

Specialty National Insurance Company's Motion for Summary

Judgment (Doc. # 53), all of which were filed on July 15,

2008, and the responses thereto (Doc. ## 55-58).

**I.    Background Facts**

     **A.    Business History**

        In the late 1990s, Defendants Michael Kastrenakes and

Maria Kastrenakes ("the Kastrenakeses") started a car rental

business under the name Pinellas Rent-A-Car, Inc.

("Pinellas").  (Doc. # 54 at 4).  At some point during the

time period from 1998 to 2000, the Kastrenakeses changed the

name of the business to Preferred Rent-A-Car, Inc. ("Preferred").[1]  (Doc. ## 14 at ¶ 10; 50 at 1; 54 at 4-5). Mr. Kastrenakes and his wife Maria were corporate officers, stockholders, and employees of both Pinellas and Preferred. (Doc. ## 54 at 5; 57-2 at 1-2; 58-5 at 4).  On July 19, 2001, the Kastrenakeses executed an Assets Purchase Agreement in which they sold certain assets of Preferred to U-Save Auto Rental of Florida, Inc. ("U-Save Florida").  (Doc. ## 14 at ¶ 11; 54-6 at 1-64).  Immediately following the asset sale, Preferred ceased doing business and the corporation was thereafter dissolved. (Doc. # 54 at 9).

Defendant U-Save Auto Rental of America, Inc. ("U-Save America") is the worldwide franchisor of the U-Save brand. (Doc. # 51 at 2).  U-Save Florida was a franchisee of U-Save America.  (Id.)  Following U-Save Florida's purchase of

---

[1] The record contains contradictory testimony regarding when the name change occurred.  At one point during his deposition, Mr. Kastrenakes testifies that he does not remember when the business' name changed from Pinellas to Preferred.  (Doc. # 54 at 4).  Shortly thereafter, Mr. Kastrenakes indicates that Pinellas existed as a corporate entity in the year 2000 and that he was an officer of the company at that time.  (Doc. # 54 at 5).  In the Kastrenakeses' Motion for Summary Judgment, they assert that the name change took place "in 1998 or 1999."  (Doc. # 50 at 1).  The Amended Complaint asserts that the business' name was changed "on or about May 3, 1999," but Plaintiff has submitted no evidence in support of that assertion.  (Doc. # 14 at ¶ 10).

Preferred, the Kastrenakeses were retained as employees of U-Save Florida, with Mr. Kastrenakes acting as general manager and Ms. Kastrenakes working in marketing. (Doc. ## 54 at 11-12). According to the Kastrenakeses, U-Save Florida did not make any significant changes to Preferred's operations, maintaining the same locations, the same vehicles, and the same employees.[2] At the time of execution of the Assets Purchase Agreement with U-Save Florida, the Kastrenakeses were jointly issued 61,527 shares of stock in U-Save America. (Doc. # 58-8).

The Kastrenakeses left U-Save Florida's employ approximately two years after the asset purchase. (Doc. # 54 at 12-13). U-Save America represents that U-Save Florida is no longer in business and that it went bankrupt in 2003. (Doc. # 51 at 2).

**B.    Specialty Insurance Policies**

On or about February 5, 2000, Specialty National Insurance Company ("Specialty") issued a commercial auto liability policy, policy number 3XZ-119006-00 ("Pinellas Policy"), to Pinellas. (Doc. ## 14 at ¶ 49; 14-5 at 1).

---

[2] Mr. Kastrenakes testified in his deposition that, other than a few corporate employees U-Save "brought down to help," the same 30-50 employees of Preferred continued as employees of U-Save Florida. (Doc. # 54 at 11-12).

Under "Named Insured" on the policy's declaration page, it reads "Michael Kastrenakes" and directly below that "DBA: Pinellas Rent A Car, Inc." (Doc. # 14-5 at 1). In other portions of the contract, it refers to the named insured as "Pinellas Rent a Car, Inc." (Doc. # 50-2 at 5, 30; 50-4 at 2; 50-6 at 2). The stated policy coverage period is February 5, 2000 through February 5, 2001. (Id.).

On or about April 1, 2000, Specialty issued a commercial auto liability policy, policy number 3XZ 119075-00 ("Preferred Policy 1"), to Preferred. (Doc. # 14 at ¶ 14; Doc. # 1-3). The policy's coverage period was April 1, 2000 to December 17, 2000. (Doc. # 1-3 at 1). A replacement policy was issued to Preferred on or about December 17, 2000, Policy number 3XZ-119075-01 ("Preferred Policy 2"), effective through December 17, 2001.

The three insurance contracts at issue each contain a "Deductible Liability Coverage" endorsement ("Deductible Endorsement") that modifies the terms of the contract. The Deductible Endorsement reduces the amount that Specialty would otherwise pay for any one accident or loss by $100,000. (Doc. # 50-6 at 2). The Deductible Endorsement contains a reimbursement provision that states: "To settle any claim or 'suit' we may pay all or any part of any deductible shown in

4

the Schedule.  If this happens, you must reimburse us for the deductible or the part of the deductible we paid."  (Id.) Specialty asserts that it has paid at least $655,372.04 to settle sixty claims or suits pursuant to these policies and that Pinellas and Preferred have failed to reimburse Specialty for the outstanding deductible amounts.  (Doc. # 14 at 8, 11).

## II.  Procedural History

Specialty filed its initial complaint on May 21, 2007 (Doc. # 1), seeking declaratory relief and damages for breach of contract against U-Save America as successor in interest to both Preferred and "Michael Kastrenakes d/b/a Pinellas Rent-A-Car."  Specialty amended its complaint on January 30, 2008, adding similar claims against the Kastrenakeses individually, as well as each of them d/b/a Pinellas and Preferred.  (Doc. # 14).

Specialty requests a declaratory judgment to the effect that U-Save America has an obligation to reimburse Specialty for all deductibles paid to settle claims under the Pinellas Policy and both Preferred Policies.  (Doc. # 14 at 4, 6).  In its breach of contract claims against U-Save, Specialty seeks total damages of $655,372.04, plus interest from the "date due," for unreimbursed deductibles paid under all three

policies.[3]  (Doc. # 14 at 5, 8).  The basis for Specialty's claims against U-Save is Specialty's contention that, pursuant to the July 19, 2001, Assets Purchase Agreement, U-Save assumed all the liabilities of both Pinellas and Preferred, including any deductibles owed to Specialty.  (Doc. # 14 at ¶ 11).  Specialty alleges that U-Save America breached the subject insurance contracts by failing to reimburse the outstanding deductible amounts after Specialty made a demand for payment.  (Doc. # 14 at 6).

In Counts V through VII, Specialty asserts the same claims against each of the Kastrenakeses, but in reference to the Pinellas Policy only.[4]  In addition to declaratory relief against the Kastrenakeses, Specialty seeks damages of $122,303.69 plus interest for unpaid deductibles under the policy.  (Doc. # 14 at 10-14).  Specialty contends that the Kastrenakeses are liable for the deductibles because Mr.

---

[3] Specialty's amended complaint seeks interest "from and after the date due according to proof." (Doc. # 14 at 6, 8). Specialty then refers to Exhibit A to the amended complaint, which lists sixty-one separate claims and specifies a date of loss for each claim. (Doc. # 14-2).  The Court assumes that Specialty intends the "date due" to be the listed date of loss.

[4] Specialty misnumbers its complaint counts and refers to both the breach of contract claim against Mr. Kastrenakes and the declaratory relief claim against Ms. Kastrenakes as Count VI.

Kastrenakes executed the policy in an individual capacity on behalf of Michael Kastrenakes d/b/a Pinellas and Ms. Kastrenakes was a "definitional insured" under the Policy. (Doc. # 14 at 9-14).  Specialty further asserts that the Kastrenakeses breached the contract by "failing and refusing to perform in good faith [their] promise to pay all or part of the $100,000 liability deductible per accident." (Doc. # 14 at 11, 13).

The Kastrenakeses jointly filed a motion for summary judgment, asserting that they are not liable for obligations arising under the Pinellas Policy because the contract reflects that the policy was issued to Pinellas as a corporate entity. (Doc. # 50 at 6-7).  The Kastrenakeses also argue that Florida's five year statute of limitations precludes any claims that arose out of settlements occurring on or before January 30, 2003. (Doc. # 50 at 4-6).

U-Save America's motion for summary judgment asserts that, as franchisor, it is not liable for the alleged debts of U-Save Florida, and even if it were found to be liable for those debts, U-Save Florida did not assume any of Preferred's debts when it purchased certain of Preferred's assets. (Doc. # 51 at 3).  In addition, U-Save America contends that any claims that arose from settlements paid by Specialty on or

before May 21, 2002 are barred by the statute of limitations.

Finally, Specialty has requested summary judgment on the issue of the statute of limitations defense raised by Defendants. (Doc. # 53). Specialty seeks a declaration from the Court that the event which started the running of the statute of limitations was the refusal to pay Specialty's demand for reimbursement of the deductibles, not the date of settlement of the claims, as asserted by Defendants. (Doc. # 53 at 4-5).

The Court will first consider the statute of limitations issue, since it may be dispositive as to the Defendants' motions for summary judgment.

## III. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. _Mize v. Jefferson City Bd. of Educ._, 93 F.3d 739, 742 (11th Cir. 1996) (citing _Hairston v. Gainesville Sun Publ'g Co._, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. _Allen v. Tyson Foods, Inc._, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. _Hickson Corp. v. N. Crossarm Co._, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." _Jeffery v. Sarasota White Sox, Inc._, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing _Celotex_, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. _Shotz v. City of Plantation, Fla._, 344

9

F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## IV. Analysis

### A. Specialty's Motion for Summary Judgment

Specialty moves for summary judgment and seeks a judicial determination as to when the statute of limitations began to run on Specialty's claim for reimbursement of deductibles paid under the subject insurance contracts.[5] (Doc. # 53 at 1).

---

[5] In separate motions for summary judgment, Defendants each raise the statute of limitations issue as one of several grounds for summary judgment. (Doc. ## 50 at 4-6; 51 at 8-9). Because Defendants fully set forth their statute of limitations arguments in these motions, they refer the Court to those motions and offer abbreviated versions of those arguments in their responses to Specialty's motion.

Specialty asserts that the limitations period began when the insureds refused Specialty's demand for reimbursement because that is the time at which the insurance contracts were breached and a cause of action accrued. (Doc. # 53 at 4-5). Defendants U-Save and the Kastrenakeses agree that the statute of limitations is triggered when a contract is breached but contend that in this case the breach occurred when Specialty settled and paid claims under the policies. (Doc. ## 55 at 3-4; 56 at 2).

Application of Florida's statute of limitations is appropriate in this case because "[s]tate law governs a diversity action concerning the interpretation of an insurance contract," <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990), and the contracts at issue were executed in Florida to insure Florida business entities. Florida Statutes § 95.11(2)(b) provides that actions based on "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument" must be commenced within five years. Fla. Stat. § 95.11(2)(b) (2008). The Court finds, and the parties agree, that the five-year limitation period set forth in Section 95.11(2)(b) applies to Specialty's claims against Defendants. (Doc. ## 50 at 4; 51 at 5; 53 at 3).

Florida Statutes § 95.031 provides that the time within which an action may be brought under any of the statutes of limitations begins "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1) (2008). The Florida Supreme Court has held that, "Generally, a cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of contract." State Farm Mut. Auto. Ins. Co. v. Lee, 678 So. 2d 818, 821 (Fla. 1996).

Defendants liken the contractual provision at issue to an indemnity agreement and argue that under Florida law a cause of action for contractual indemnification accrues when payment is made. (Doc. ## 50 at 5; 51 at 8-9). The Court disagrees with this characterization of the reimbursement provision. Contractual indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated [by contract] to pay, . . . to another who should bear the cost because it was the latter's wrongdoing for which the former is held liable." Allstate Ins. Co. v. Metro. Dade County, 436 So. 2d 976, 978 (Fla. 3d DCA 1983) (citing Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490, 493 (Fla. 1979). Here, Specialty is not being held liable for any wrongdoing by Defendants. Thus, this controversy is better

12

understood as a claim for breach of a contractual provision that obligated Defendants to repay Specialty for any deductible amounts paid to settle claims under the insurance policy.

It is Specialty's position that the insurance contracts were breached when reimbursement for the deductibles was demanded and refused by Defendants. (Doc. ## 57 at 7-9; 58 at 8-10). In support of this proposition, Specialty relies heavily on State Farm Mutual Insurance Co. v. Lee, in which an insured brought suit against its insurer for failure to pay a contractual obligation for personal injury protection ("PIP") benefits. 678 So. 2d at 818-19.

In State Farm, the insurer moved to dismiss the action as barred by the five-year statute of limitations, which it claimed began to run on the date of the accident. Id. at 819. The Florida Supreme Court held that the insured's cause of action did not accrue, and the statute of limitations did not begin to run, until the insurer had breached its obligation to pay the claim. Id. at 818. Under a statutory provision regarding PIP benefits, the insurer was not obligated to pay the PIP claim until thirty days after the insurer received written notification of the occurrence and amount of the covered loss. Id. at 821 (citing Fla. Stat. § 627.736(4)(b)

13

(1995)).  Therefore, it was held that the limitations period did not begin until the thirty day period had expired without payment by the insurer, at which time the insured could have brought an action against the insurer.  Id.

By analogy to the holding in State Farm, Specialty argues that Specialty could not have brought suit until Defendants breached their obligation to reimburse Specialty for the deductibles and such an obligation did not arise until Specialty demanded payment and Defendants refused to pay.  The Court disagrees with this reasoning.  In State Farm, the Court explicitly recognized that the insurer's "obligation to pay . . . arose 'as the loss [was] incurred,'" but the Court held that a cause of action did not accrue until payment was considered overdue under the PIP statute.  678 So. 2d at 820-21.  Here, the Court cannot look to a statutory payment deadline and the insurance contract provides no guidance as to when reimbursement by the insured is considered overdue.

The endorsement provides that if Specialty "pays all or any part of any deductible" to settle a claim or suit then the insured "must reimburse us for the deductible or part of the deductible we paid." (Doc. # 50-2 at 65).  The only express condition precedent to the insured's duty to reimburse is Specialty's settlement of a suit or claim.  There is nothing

14

in the contract to prevent Specialty from making an immediate demand for reimbursement upon settlement of a claim.  Nor does the contract place any limitations on Specialty's right of action on the reimbursements.  Consequently, the Court finds that on the date that Specialty remitted the deductible amounts to settle a claim on behalf of the insured, a cause of action arose to recover those amounts from the insured.

Specialty argues that it could not have brought suit against Defendants, and therefore a cause of action could not have accrued, until Specialty demanded reimbursement of the deductibles and Defendants refused payment, because only then would Specialty have sustained any damages.  (Doc. # 53 at 3-4).   The Court rejects this contention.   In settling the subject claims, Specialty paid damages in excess of its obligation under the insurance policy in reliance on the insured's promise to repay those amounts.   Nothing in the contract prevented Specialty from demanding repayment from the insured at any time.  Consequently, Specialty suffered damages beginning on the date of settlement and continuing until the outstanding amounts were paid by the insured.

Thus, the Court holds that the statute of limitations for Specialty's action to recover reimbursement of deductibles alleged to have been paid to settle claims under Defendants'

liability policies began to run on the date of settlement of the claim.  Such a ruling is in keeping with the purpose of the statute of limitations, which is to "protect unwitting defendants from the unexpected enforcement of stale claims brought by plaintiffs who have slept on their rights." Maynard v. Household Fin. Corp. III, 861 So. 2d 1204, 1207 (Fla. 2d DCA 2003).  Such protection seems particularly appropriate in the present circumstances, wherein Specialty seeks reimbursement related to claims alleged to have been paid, for the most part, between seven and eight years ago from insured entities that have long since been sold or dissolved.

Under the applicable five-year statute of limitations, Specialty is therefore barred from asserting claims against U-Save that pertain to settlements alleged to have been paid on or before May 21, 2002.[6]  Since the Kastrenakeses were not added as defendants until the amended complaint was filed on January 30, 2008, claims arising from settlements alleged to have been paid by Specialty on or before January 30, 2003, are

---

[6] This cause of action was initially brought on May 21, 2007, and the only named defendant at that time was U-Save Auto Rental of America, Inc. (Doc. # 1 at 1).  Therefore, the statute of limitations bars claims against U-Save that accrued on or before May 21, 2002.

also barred by the statute of limitations.[7]

Specialty has submitted evidence that several asserted claims under the subject policies were paid and settled after those cut-off dates.[8]  ( See Doc. # 50-3 at 2-7).  Therefore, only those claims alleged to have been paid after May 21, 2002 or January 30, 2003, depending on the appropriate defendant, will be the subject of this case going forward.  Some uncertainty exists as to the exact number of claims settled and the settlement dates.[9]  Based on these genuine issues of

---

[7] For limitations purposes, when a complaint is amended to add a new party defendant the action as to that defendant is not commenced until the amended complaint is filed.  Owens v. Fla. Patient's Comp. Fund, 428 So. 2d 708, 710 (Fla. 1st DCA 1983).

[8] Specialty's proof of claims indicates thirty claims that were settled by Specialty after May 21, 2002.  (Doc. # 50-3).  The proof of claim lists six claims with settlement dates falling after January 30, 2003.  (Id.)  In addition, Specialty contends that two additional claims have been settled since initiation of this lawsuit.  (Doc. # 57 at 2 n. 1).

[9] Specialty acknowledges in its response in opposition to the Kastrenakeses' Motion for Summary Judgment that "the amounts sought in the Amended Complaint differ from the amounts set forth in its interrogatory answers."  (Doc. # 57 at 2 n. 1).  Specialty indicates that several of its original claims were discovered to have been "mistakenly identified as having been made under the policy at issue here."  (Id.) Also, on its chart that individually lists each claim, its amount, and the date paid, Specialty states that the days included in the chart "may be approximate dates."  (Doc. # 50-3 at 3 n. 1).

material fact regarding the amount of damages, if any, that are owed to Specialty, this issue is appropriately decided by a jury and is not properly addressed on summary judgment.

**B.    The Kastrenakeses' Motion for Summary Judgment**

Specialty's amended complaint asserts that the Kastrenakeses, individually and doing business as Pinellas Rent-A-Car, Inc., are obligated to reimburse Specialty for $122,303.69 in liability deductibles paid by Specialty to settle claims under the Pinellas Policy. (Doc. # 14 at 9-14). The Kastrenakeses assert that they are entitled to summary judgment on these claims because (1) the claims are barred by the statute of limitations, and (2) the Kastrenakeses have no individual liability for reimbursement of deductibles that are allegedly owed to Specialty pursuant to an insurance policy that was issued to the corporate entity Pinellas Rent-A-Car, Inc. (Doc. # 50 at 4-7).

The statute of limitations issue has been addressed above and because not all of Specialty's claims are extinguished by application of the statute of limitations the Kastrenakeses are not entitled to summary judgment on those grounds. Therefore, the Court will confine its analysis to the Kastrenakeses' second argument.

To succeed on their summary judgment motion, the

Kastrenakeses have the initial burden of showing that there is an absence of evidence to support Specialty's contention that the Kastrenakeses have individual liability for amounts allegedly owed under the Pinellas Policy.  See Hickson, 357 F.3d at 1260.  To this end, the Kastrenakeses urge that the policy's repeated references to "Pinellas Rent-A-Car, Inc." as being the insured, the policy's statement that the insured is a corporation, and the counter-signature endorsements identifying "Pinellas Rent-A-Car, Inc." as the insured, remove "any basis for a claim" against Michael or Maria Kastrenakes. (Doc. # 50 at 7).

The Court disagrees.  Specialty points to several facts that raise doubt regarding the intent of the Kastrenakeses' in taking out the Pinellas Policy.  First, Specialty raises the fact that "Michael Kastrenakes DBA: Pinellas Rent A Car, Inc." is the Named Insured on the Declarations page of the policy. (Doc. ## 57 at 3; 50-2 at 4).  There is a provision in the Pinellas Policy that states that, "Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations."  (Doc. ## 57 at 3; 50-2 at 15).  In the deductible liability endorsement, it indicates that "you" must reimburse Specialty for deductibles paid to settle a claim or suit.  (Doc. # 50-2 at 65).  Thus, Specialty argues that

19

"Michael  Kastrenakes  DBA:  Pinellas  Rent  A  Car,  Inc." is responsible for reimbursing these deductibles.  (Doc. # 57 at 3).

Second, Specialty submits evidence that on May 15, 2000, Michael Kastrenakes signed an application for short-term auto rental coverage and the applicant was identified as "Michael Kastrenakes DBA: Pinellas Rent A Car, Inc." (Doc. ## 57 at 4; 54-3 at 1).  In addition, the signature line does not indicate that  Michael  Kastrenakes  is  signing  on  behalf  of  a corporation.  (Doc. # 54-3 at 4).  Thus, Specialty contends that in signing that application Kastrenakes "represented [to Specialty]  that  Pinellas  was  his  personal  DBA  identity." (Doc. # 57 at 5).

Finally,  Specialty  argues  that  Michael  Kastranekes purported to act on behalf of Pinellas when the entity no longer existed, thus exposing himself to individual liability for all liabilities created while so acting.  (Doc. # 57 at 5-6) (citing Terranova Corp. v. Fried, 548 So. 2d 270, 271 (Fla. 3d DCA 1989) (holding that an officer of a corporation is individually liable for rents incurred while the corporation is dissolved if the officer knew or had reason to know of the dissolution)).  Kastrenakes took out Preferred Policy 1 on April 1, 2000.  (Doc. # 14-3 at 1).  The Pinellas Policy was

20

effective from February 5, 2000 to February 5, 2001 (Doc. # 14-5 at 1), and thus the Pinellas Policy and Preferred Policy 1 overlapped by eight months.   The Kastrenakeses have indicated that during those overlapping months they were operating under the name Preferred Rent-A-Car.  (Doc. # 57 at 6).[10]

Because claims under the Pinellas Policy arose during the eight month overlap between the Pinellas and Preferred Policies, and because the Kastrenakeses had knowledge during that time that Pinellas was no longer operating under the Pinellas name, Specialty asserts that Michael Kastrenakes is personally liable for the deductible amounts paid to settle the claims that arose during that period.  (Doc. # 57 at 6-7).

This Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing a motion for summary judgment, and all reasonable doubts about the facts are resolved in favor of the non-movant: Specialty. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   There is a genuine issue of material fact concerning whether Michael Kastrenakes took out the Pinellas Policy in an

---

[10] In their motion for summary judgment, the Kastrenakeses assert as fact that Pinellas changed its name to Preferred "in 1998 or 1999.".  (Doc. # 50 at 1).

individual capacity and whether he is personally liable for the deductible amounts that were paid by Specialty under that policy.   Accordingly, the Court finds that a jury should determine whether the Kastrenakeses are liable for those claims that are not barred by the statute of limitations.

**C.**   U-Save America's Motion for Summary Judgment

Specialty is asserting that U-Save America is a "successor in interest" to Preferred and therefore assumed the liabilities under insurance policies issued to both Pinellas and Preferred.   (Doc. # 14 at 4-9).   Thus, Specialty is seeking at least $ 655,372.04 in damages from U-Save. (Id. at 4).

U-Save moves for summary judgment on four grounds: (1) U-Save America is not responsible for the debts of its franchisee U-Save Florida; (2) even if U-Save America were liable for the acts of U-Save Florida, U-Save Florida was not a successor corporation of Preferred and therefore did not assume Preferred's alleged debt to Specialty; (3) pursuant to the purchase and sales agreement, U-Save Florida did not assume insurance deductible fund liabilities; and (4) the statute of limitations bars Specialty from recovering anything paid on or before May 21, 2002.   (Doc. # 51 at 10).

**i.   U-Save's Liability as Franchisor**

The parties agree that U-Save America is the franchisor of the U-Save brand worldwide and that U-Save Florida was a franchisee of U-Save America.  (Doc. ## 51 at 9; 58 at 3). However, it is well settled that it takes more than "the mere use of franchise logos and related advertisements" or "the provision of routine contractual support services" to establish an agency relationship such that the franchisor can be held liable for the actions of its franchisee.  <u>Mobil Oil Corp. v. Bransford</u>, 648 So. 2d 119, 120 (Fla. 1995).

To establish an agency relationship, the franchisor must have, by contract, action, or representation, "directly or apparently participated in some substantial way in directing or managing acts of the franchisee."  <u>Id.</u>  The question of whether an agency relationship exists is normally one for the jury to decide and is appropriate for summary judgment only "where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve." <u>Font v. Stanley Steemer Int'l, Inc.</u>, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003).  That is not the case here.

In denying the existence of an agency relationship, U-Save argues that there is no evidence in the record that can serve as a basis for finding that U-Save America directly or apparently participated in directing or managing the acts of

23

U-Save Florida.  (Doc. # 51 at 9).  U-Save asserts that U-Save America and U-Save Florida were separate corporations, U-Save America was not involved in any way with U-Save Florida's purchase of Preferred's assets, and that U-Save Florida had its own management team in Florida that operated Florida franchises.  (Doc. ## 51 at 9; 52 at 16).

Neither party submits or makes reference to any franchise agreement between U-Save America and U-Save Florida.  However, Specialty points to corporate filings with the Florida Department of State, Division of Corporations, that reflect common officers and directors of both U-Save America and U-Save Florida.  (Doc. ## 58 at 4; 58-2 at 1-4).  In addition, Specialty contends that "officers and directors of U-Save America were actively involved in the negotiation and purchase of Preferred's assets by U-Save Florida," acting on behalf of both corporations.  (Doc. # 58 at 4).

In fact, the corporate filings on record with Florida's Division of Corporations list Thomas P. McDonnell III ("McDonnell") and O. Kendall Moore ("Moore") as Officers/Directors of both U-Save America and U-Save Florida. (Doc. # 58-2 at 1-4).  In addition, the Assets Purchase Agreement, under which the assets of Preferred were sold to U-Save Florida, was executed by McDonnell as "President" of "U-

24

Save Auto Rental of Florida, Inc." (Doc. # 52 at 97). The Purchase Agreement also stated that any communications directed to the Purchaser that are required or permitted under the Agreement are to be sent to Moore, as "Vice President and General Counsel" of U-Save Florida. (Doc. # 52 at 94). The address listed in the Agreement for such correspondence to U-Save Florida is the same as the "principal address" that is listed on U-Save America's corporate filing with Florida's Department of State. (Doc. ## 52 at 94; 58-2 at 3).

Further, in response to Specialty's interrogatory question asking which U-Save representatives participated in the negotiation and drafting of the Assets Purchase Agreement, Michael Kastrenakes testifies that "Thomas P. McDonnell, III and U-Save's attorney whose name I cannot remember" were the participants on behalf of U-Save. (Doc. # 58-5 at 5). Thus, Specialty has presented evidence that could lead a reasonable jury to find that U-Save America participated in the acquisition of Preferred and had some degree of continuing involvement in the management and directorship of U-Save Florida after it acquired Preferred's assets.

Because there is a genuine issue of material fact as to the extent of U-Save America's involvement in U-Save Florida, the Court declines to find that U-Save America is not

responsible for the debts of U-Save Florida.  A jury should determine whether an agency relationship existed such that U-Save America as franchisor can be held liable for the actions of its franchisee, U-Save Florida.  Accordingly, the Court must proceed to consider whether summary judgment is appropriate as to U-Save Florida's liability for the unpaid deductible.

### ii.  U-Save Florida's Liability as Successor Corporation of Preferred

Under Florida law, the liabilities of a selling predecessor corporation can only be imposed on the buying successor corporation if: "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." Bernard v. Kee Mfg. Co., 409 So. 2d 1047, 1049 (Fla. 1982). U-Save America argues that U-Save Florida did not assume Preferred's alleged debt to Specialty because none of these four exceptions are met under the facts of this case.

Specialty argues that two of the exceptions do apply to U-Save Florida's acquisition of Preferred.  Specialty asserts that (1) U-Save Florida expressly or impliedly agreed to

assume Preferred's liability under the Specialty policies, and (2) U-Save Florida's purchase of Preferred's assets was a de facto merger.   (Doc. # 58 at 5-8).   If there is a genuine issue of material fact as to either of these exceptions, then summary judgment in U-Save's favor must be denied.

U-Save asserts that U-Save Florida did not expressly or impliedly agree to assume Preferred's debt to Specialty under the liability policies because the Assets Purchase Agreement specifically identifies the liabilities that are to be assumed by U-Save Florida and any debt that Preferred might have owed Specialty is not identified on that list.   (Doc. # 51 at 3). Specialty disagrees, arguing that Section 1.4(a)(ii) of the purchase agreement provides that U-Save Florida assumed "all liabilities and obligations of Seller arising in the regular and ordinary course of the Business between the Balance Sheet Date and the Closing Date, to the extent that the same remain unpaid and undischarged on the Closing Date . . . ." (Doc. # 52 at 45).   The Balance Sheet Date is December 31, 2000, and the Closing Date is July 19, 2001.   (Doc. ## 51-3 at 1; 52 at 98).

It is Specialty's position that, because many of the subject claims arose between those two dates, U-Save assumed the obligation to pay the related deductibles.   U-Save Florida

27

argues that liability for deductibles arising under an insurance contract are not obligations related to "the regular and ordinary course of business," which is instead understood to mean non-contractual expenses related to the day-to-day operations of the business, such as rent payments and overhead. (Doc. # 52 at 15). U-Save Florida asserts that there is no case law to support such a contention and that "[c]ertainly, claims for damages and injuries arising out of Preferred's rental of vehicles to a third party would qualify as the 'regular and ordinary course' of Preferred's business." (Doc. # 58 at 6).

The Court, through its own research, was unable to find legal support for Specialty's assertion that insurance claims cannot be considered obligations arising in the ordinary course of business. The term "ordinary course of business," as used in this contract, is fairly susceptible to more than one interpretation and is thus ambiguous. See King v. Bray, 867 So. 2d 1224, 1227 (Fla. 5th DCA 2004) (noting that language is ambiguous when it is fairly interpreted as having more than one meaning). "Although the construction of a contract is ordinarily a matter of law, where the terms of a written instrument are disputed and are reasonably susceptible to more than one construction, an issue of fact is presented."

28

State Farm Fire & Cas. Co. v. De Londono, 511 So. 2d 604, 605 (Fla. 3d DCA 1987) (citations omitted).  The factual dispute regarding whether this contract provision in the Purchase Agreement was intended to include obligations arising pursuant to insurance contracts, which would determine U-Save Florida's liability for at least part of Preferred's debt to Specialty, presents a genuine issue of material fact that renders summary judgment inappropriate.

Even if this were not the case, Specialty raises an additional issue of fact that precludes summary judgment.  As Specialty points out, the purchase agreement indicates that U-Save Florida purchased "all rights under any written or oral contract."  (Doc. # 52 at 41, § 1.1.1(f)).  Specialty argues that Preferred's insurance contract with Specialty falls within this provision and if U-Save Florida intended to exclude the Specialty policies from the asset acquisition, it would have listed them under "Excluded Assets".  (Doc. ## 58 at 5; 52 at 42, § 1.1.2).  Thus, because U-Save Florida purchased Preferred's rights under the insurance policies, Specialty contends that they are responsible for the deductibles arising under that policy.

The Court agrees that if any insurance policy issued by Specialty was included within the meaning of "written or oral

contracts," and U-Save Florida exercised its rights to auto insurance protection under that policy, then U-Save Florida would have acquired the deductible liabilities arising under that policy.  See Hartford Accident & Indemnity Co. v. L & T, Inc., 455 So. 2d 1074, 1076 (Fla. 1st DCA 1984) (noting that generally, "a party who accepts the benefits of a contract cannot escape its burdens").  U-Save denies that the insurance polices were meant to be included in the asset transfer.

This dispute regarding whether the Specialty policies fell within the "oral or written contracts" language of the Assets Purchase Agreement and therefore bound U-Save Florida to pay the related deductibles is not appropriately decided as a matter of law.  The parties will be afforded an opportunity to present extrinsic evidence as to the parties' intentions and whether U-Save Florida accepted any of the benefits of the insurance policies.  This evidence is appropriately considered and the issue decided by a jury. Thus, this dispute presents an additional reason to deny summary judgment.

Because under this issue alone there exists a genuine issue of material fact as to whether U-Save Florida assumed liability for the payment of deductibles under the Specialty policies, the Court need not reach U-Save's remaining arguments for summary judgment.

30

### iii.   Claims Barred by the Statute of Limitations

U-Save America also raises the statute of limitations as a basis for summary judgment.  As the Court has previously decided, only those claims asserted against U-Save that accrued on or before May 21, 2002, are barred by the statute of limitations.  Because Specialty has submitted evidence of approximately thirty claims that were settled after that date, summary judgment is denied on this basis as well.

## V.   Conclusion

Specialty's motion for summary judgment regarding application of the statute of limitations is denied. Specialty's cause of action to recover unpaid deductibles under liability policies issued to Pinellas and Preferred accrued as of the dates of settlement of the claims. Therefore, the statute of limitations bars all of Specialty's claims that relate to settlements that occurred within five years of the time that a cause of action was filed against Specialty and the Kastrenakeses.

Genuine issues of material fact exist as to both U-Save America's and the Kastrenakeses' liability for the remaining claims by Specialty.  Thus, U-Save America's motion for summary judgment and the Kastrenakeses' motion for summary judgment are denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Specialty National Insurance Company's Motion for Summary Judgment (Doc. # 53) is **DENIED.**  The statute of limitations for Specialty's action to recover reimbursement of deductibles alleged to have been paid to settle claims under Defendants' liability policies began to run on the dates of settlement.  Thus, Specialty is precluded from recovering for any claims against U-Save America that were settled on or before May 21, 2002, and any claims against the Kastrenakeses that were settled on or before January 30, 2003.

(2)   Defendants Michael Kastrenakes and Maria Kastrenakes' Motion for Summary Judgment (Doc. # 50) is **DENIED.**

(3)   Defendant U-Save Auto Rental of America, Inc.'s Motion for Final Summary Judgment (Doc. # 51) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>12th</u> day of November 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

32

All Counsel of Record