UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPECIALTY NATIONAL INSURANCE
COMPANY,

                    Plaintiff,

v.                                    Case No. 8:07-cv-878-T-33MAP

U-SAVE AUTO RENTAL OF AMERICA,
et al.,

                    Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to a non-jury trial held on December 9, 2008. After considering all the evidence, the pleadings filed by the parties, the arguments made by counsel, and the legal authorities submitted to the Court, the Court makes the following findings of fact and conclusions of law. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such. For the reasons stated below, the Court finds that judgment should be entered in favor of Defendants U-Save Auto Rental of America, Inc., Michael Kastrenakes d/b/a Pinellas Rent-A-Car, Inc., Michael Kastrenakes d/b/a Preferred Rent-A-Car, Inc.,

and Michael Kastrenakes, individually.

## I.   Background

### A.   Business History

In the late 1990s, Defendants Michael Kastrenakes and Maria Kastrenakes ("the Kastrenakeses") started a car rental business under the name Pinellas Rent-A-Car, Inc. ("Pinellas"). (Doc. # 54 at 4). The name of the business was changed to Preferred Rent-A-Car, Inc. ("Preferred") on May 3, 1999. (Doc. # 82 at 14). Mr. Kastrenakes and his wife Maria were corporate officers, stockholders, and employees of both Pinellas and Preferred. (Doc. ## 54 at 5; 57-2 at 1-2; 58-5 at 4). On July 19, 2001, the Kastrenakeses executed an Assets Purchase Agreement in which they sold certain assets of Preferred to U-Save Auto Rental of Florida, Inc. ("U-Save Florida"). (Doc. ## 14 at ¶ 11; 54-6 at 1-64). Immediately following the asset sale, Preferred ceased doing business and the corporation was thereafter dissolved. (Doc. # 54 at 9).

Defendant U-Save Auto Rental of America, Inc. ("U-Save America") is the worldwide franchisor of the U-Save brand. (Doc. # 51 at 2). U-Save Florida was a franchisee of U-Save America. (Id.) Following U-Save Florida's purchase of Preferred, the Kastrenakeses were retained as employees of U-Save Florida, with Mr. Kastrenakes acting as general manager and Ms. Kastrenakes working in marketing. (Doc. ## 54 at 11-

12). According to the Kastrenakeses, U-Save Florida maintained the same locations, the same vehicles, and most of the same employees. At the time of execution of the Assets Purchase Agreement with U-Save Florida, the Kastrenakeses were jointly issued 61,527 shares of stock in U-Save America. (Doc. # 58-8).

The Kastrenakeses left U-Save Florida's employ approximately two years after the asset purchase. (Doc. # 54 at 12-13). U-Save Florida is no longer in business. (Doc. # 51 at 2).

### B. Specialty Insurance Policies

On or about February 5, 2000, Specialty National Insurance Company ("Specialty") issued a commercial auto liability policy, policy number 3XZ-119006-00, to Pinellas. (Doc. ## 14 at ¶ 49; 14-5 at 1). Under "Named Insured" on the policy's declaration page, it read "Michael Kastrenakes" and directly below that "DBA: Pinellas Rent A Car, Inc." (Doc. # 14-5 at 1). In other portions of the contract, it referred to the named insured as "Pinellas Rent a Car, Inc." (Doc. # 50-2 at 5, 30; 50-4 at 2; 50-6 at 2). The stated policy coverage period was February 5, 2000 through February 5, 2001. (Id.).

On or about April 1, 2000, Specialty issued a commercial auto liability policy, policy number 3XZ 119075-00, to Preferred. (Doc. # 14 at ¶ 14; Doc. # 1-3). The policy's

coverage period was April 1, 2000 to December 17, 2000. (Doc. # 1-3 at 1). A replacement policy was issued to Preferred on or about December 17, 2000, Policy number 3XZ-119075-01, effective through December 17, 2001.

The three insurance contracts at issue each contained a "Deductible Liability Coverage" endorsement ("Deductible Endorsement") that modified the terms of the contract. The Deductible Endorsement reduced the amount that Specialty would otherwise pay for any one accident or loss by $100,000. (Doc. # 50-6 at 2). The Deductible Endorsement contained a reimbursement provision that stated: "To settle any claim or 'suit' we may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid." (Id.). Specialty asserted that it paid at least $655,372.04 to settle sixty claims or suits pursuant to these policies and that Pinellas and Preferred failed to reimburse Specialty for the outstanding deductible amounts. (Doc. # 14 at 8, 11). Specialty seeks to recover the deductibles payments from U-Save America and Mr. Kastrenakes.

## II. The Parties' Theories of the Case

At trial, Specialty indicated that it was withdrawing all claims against Maria Kastrenakes. Thus, Specialty sought to show that Michael Kastrenakes, individually, was liable for

reimbursement to Specialty of deductibles Specialty paid to settle claims under insurance policy number 3XZ119006-00. First, Specialty claims that Mr. Kastrenakes intended to apply individually for insurance under that policy and therefore he was a named insured on the policy. Second, Specialty contends that its intent in taking the application was to issue a policy to Mr. Kastrenakes individually. Thus, Specialty asserts that under the terms of the policy Mr. Kastrenakes, as named insured, is responsible for the deductibles paid on his behalf to settle claims. Alternatively, Specialty claims that Mr. Kastrenakes is individually liable under the policy because when he took out the policy in the name of Pinellas Rent-A-Car, Inc., he was aware that Pinellas had already changed its name to Preferred Rent-A-Car, Inc. and therefore Pinellas was no longer in existence.

Mr. Kastrenakes took the position that he applied for the insurance policy with Specialty in his capacity as corporate officer of Pinellas Rent-A-Car, Inc., and therefore he is not personally liable for deductibles paid under insurance policy number 3XZ119006-00. In addition, Mr. Kastrenakes asserts that Pinellas Rent-A-Car never ceased to exist when the name was changed to Preferred.

As to U-Save America, Specialty sought to show that U-Save America is liable for deductibles Specialty paid under

policy numbers 3XZ119075-00 and 3XZ119075-01. First, Specialty claims that U-Save Florida assumed the insurance deductible fund liability via the Asset Purchase Agreement for the deductibles paid under the policies. Alternatively, Specialty asserts that U-Save Florida assumed liability for deductibles under the insurance policies as successor in interest to Pinellas and Preferred. Finally, Specialty contends that U-Save America is responsible for the debts of U-Save Florida as either a parent corporation of U-Save Florida or a franchisor that controlled its operations.

Specialty took the position at trial that it has no liability for the deductibles paid under the two policies because U-Save Florida never assumed liability for the deductibles under the terms of the Asset Purchase Agreement. Nor did U-Save Florida become liable for the deductibles as successor in interest because the asset sale was not a de facto merger of U-Save Florida and Preferred. Even if U-Save Florida did assume the deductible fund liability under the policies, U-Save America contends that it is not liable for the debts of U-Save Florida. According to U-Save America, it never assumed those liabilities because there was no agency relationship between the two entities, and U-Save America did not exercise operational control over U-Save Florida such that it would be responsible as a parent corporation.

## III. Findings of Fact

### A.  Michael Kastrenakes

Husband and wife Michael and Maria Kastrenakes were owners of Pinellas Rent-A-Car, Inc. (Doc. # 82 at 14).  On May 3, 1999, Pinellas's name was changed to Preferred Rent-A-Car, Inc.  (Id.).  The name change was filed with the Secretary of State.  (Def. Kastrenakes Exh. 1B).  Mr. Kastrenakes testified that when the business name was changed the corporation never ceased to exist and the business continued its rental car operations essentially unchanged and from the same locations.  Mr. Kastrenakes remained President of the corporation and both he and Ms. Kastrenakes remained corporate officers after the name change.

Mr. Kastrenakes testified that, as part of its standard business operations, the corporation purchased short-term auto rental insurance.  On March 22, 2000, Specialty issued Short Term Auto Rental Policy Number 3XZ119006-00, which was effective from February 5, 2000 to February 5, 2001. (Doc. # 82 at 14).  The policy contains a Deductible Liability Coverage Endorsement which commits the insured to reimburse Specialty for payments made to settle claims on behalf of the insured up to the $100,000 deductible amount. (Pl. Exh. 1 at 65).  Mr. Kastrenakes testified at trial that the policy was paid for with funds of the corporation.

Specialty offered a copy of the insurance policy into evidence. (Pl. Ex. 1). The common policy declarations page listed as named insured "Michael Kastrenakes d/b/a Pinellas Rent-A-Car, Inc.," although at least twelve times throughout the policy the named insured was designated as "Pinellas Rent-A-Car, Inc." (Id.). On the business declarations page of the policy, it also identified the corporation as the insured. (Id. at 9). Mr. Kastrenakes testified that there was no entity known as "Michael Kastrenakes d/b/a Pinellas Rent-A-Car, Inc.," and that he never conducted business under his name personally.

Specialty also offered into evidence a four-page insurance application signed by Michael Kastrenakes, which it claims was completed by Mr. Kastrenakes in his individual capacity to secure policy number 3XZ119006-00. (Pl. Exh. 6). Specialty's corporate representative, James Hawkins, testified that he had no personal knowledge related to the application for policy number 3XZ119006-00. The first three pages of the application are numbered consecutively two, three, and four in the upper right hand corner. The first three pages also contain a fax trailer dated January 18, 1999. However, the fourth page is not marked with a fax trailer, nor is it numbered to indicate that it was faxed along with the original application. Mr. Kastrenakes' signature is on the fourth page

and is dated May 15, 2000, two months after Specialty issued Policy Number 3XZ119006-00, and seventeen months after the application was forwarded to Mr. Kastrenakes.

The Court finds that Specialty has failed to prove by a preponderance of the evidence that the application page dated May 15, 2000 was part of the application for Policy Number 3XZ119006-00, which was dated February 5, 2000, and issued on March 22, 2000. It is just as likely that Mr. Kastrenakes' signature on the May 15, 2000 application page corresponds to one of the two policies issued to the corporation under the name Preferred in May of 2000.

In addition, since this application is dated after the issuance of the policy, there is no evidence that Mr. Kastrenakes ever represented to Specialty that he was doing business in an individual capacity prior to the issuance of policy number 3XZ119006-00. To the contrary, the evidence suggests that Specialty believed it was doing business with a corporation as evidenced by email communications between Specialty employees on March 30, 2000, which show that Specialty thought it was issuing policies on behalf of two corporations, Pinellas and Preferred. (Def. Kastrenakes' Exh. 4A).

Having weighed the testimony and the evidence, the Court finds that Michael Kastrenakes did not intend to take out

policy number 3XZ119006-00 in his individual capacity, but as corporate representative for Pinellas Rent-A-Car, Inc. In addition, the Court finds that Specialty believed that it was issuing policy number 3XZ119006-00 to the corporate entity Pinellas Rent-A-Car, Inc. Therefore, the corporate entity was the named insured under the policy.

### B. U-Save America

On May 8, 2000, Specialty issued Short Term Auto Rental Policy Number 3XZ119075-00 to Preferred Rent-A-Car, Inc./Hitachi Program Vehicles, effective April 1, 2000, to December 17, 2000. (Pl. Exh. 2). On May 10, 2000, replacement policy number 3XZ119075-01 was issued to Preferred Rent-A-Car, Inc./Hitachi Program Vehicles, effective December 17, 2000, through December 17, 2001. (Pl. Exh. 3). Each of these policies contained a Deductible Liability Coverage Endorsement.

Prior to July 19, 2001, Kastrenakes on behalf of Preferred and C. Thomas McDonnell ("McDonnell") on behalf of U-Save Florida, Inc. negotiated a sale of some of Preferred's assets. Their negotiations resulted in an Assets Purchase Agreement signed by the parties on July 19, 2001. As part of the asset sale, the Kastrenakes were issued 61,527 shares of stock in U-Save America, but Mr. Kastrenakes was never an officer, director, or shareholder of U-Save Florida.

Immediately following the sale, Preferred ceased doing business and the corporation was thereafter dissolved. Kastrenakes then worked for U-Save Florida for approximately 2 years as a manager.

Kastrenakes offered testimony at trial that, after the asset sale, U-Save Florida kept the same locations and most of the employees that had previously worked for Preferred. However, U-Save Florida did not retain any officers or stockholders of Preferred as officers or stockholders of U-Save Florida. U-Save Florida sent a corporate manager to oversee the business and assigned a management team to train the employees regarding various changes to the business, such as use of a national reservation system and proper use of the national U-Save name.

McDonnell testified that, in 2001, U-Save Florida was one of approximately 300 U-Save brand franchisees. U-Save America was a separate and distinct corporation from U-Save Florida. Although the stock of U-Save Florida was owned by U-Save America and McDonnell was an officer of both companies, the two companies were separate and distinct businesses. (Doc. # 82 at 14). U-Save Florida was in the business of daily car rentals and U-Save America is in the business of selling franchises but is not in the business of daily car rentals. U-Save Florida dissolved on June 1, 2004. (Id. at 15).

## IV. Conclusions of Law

Prior to trial, this Court issued its Order of November 12, 2008, finding that certain of Specialty's claims were barred by the applicable statute of limitations. (Doc. # 66 at 32). Because this cause of action was initially brought on May 21, 2007, and only named U-Save America as Defendant (Doc. # 1 at 1), the statute of limitations bars claims against U-Save America that pertain to settlements paid on or before May 21, 2002. (Doc. # 66 at 16). Specialty's evidence at trial establishes that Specialty paid $26,809.20 to settle claims under policy number 3XZ119075-00, and Specialty paid $184,891.51 to settle claims under policy 3XZ119075-01, after May 21, 2002. (Pl. Exh. # 4). However, the Court concludes that neither U-Save America nor Mr. Kastrenakes is liable to Specialty for those deductibles.

### A. Michael Kastrenakes

The Court concludes that Michael Kastrenakes is not individually liable for the deductibles incurred under policy number 3XZ119006-00 because Specialty did not prove by a preponderance of the evidence that Mr. Kastrenakes applied for the policy individually, that he ever received the policy, or that he ever represented to Specialty he was doing business in an individual capacity on behalf of Pinellas Rent-A-Car, Inc. Furthermore, even if the application signature page dated May

15, 2000, related to Policy Number 3XZ119006-00, the misnomer on the insurance policy does not create individual liability for Mr. Kastrenakes because a contract entered into under a company's former name does not render the transaction invalid, nor does it create personal liability for the signor.

Both Mr. Kastrenakes and Specialty believed the corporation was purchasing the insurance policy. Email correspondence between Specialty employees dated March 30, 2000, verify that Specialty thought it was dealing with two separate corporations, Pinellas and Preferred, not Mr. Kastrenakes individually. Furthermore, the insurance policy listed Pinellas Rent-A-Car, Inc. twelve different times as the named insured. For example, the policy indicates that Pinellas is the named insured on both the deductible liability page. Thus, by its express terms, the reimbursement obligation under the Deductible Liability Coverage was from Pinellas Rent-A-Car, Inc. not Michael Kastrenakes. Therefore, Mr. Kastrenakes is not personally liable for the deductibles paid on policy number 3XZ119006-00.

In addition, Specialty failed to prove by a preponderance of the evidence that Mr. Kastrenakes should be personally liable because he knowingly acted on behalf of a corporation that no longer existed. At the time Mr. Kastrenakes entered into the insurance contract with Specialty he was a

shareholder of a Florida corporation which operated a rental car business that was in good standing in Florida. Even though the name changed, the corporation continued in existence because, "the change of name of a corporation has no effect upon its property, rights, or liabilities" and it continues on in existence as before. Stewart v. Preston, 86 So. 348, 349 (Fla. 1920).

Specialty relies on Terranova Corp. v. Fried, 548 So. 2d 270 (Fla. 3d DCA 1989), to support its position that Mr. Kastrenakes should be personally liable because he knowingly acted on behalf of a corporation that was no longer in existence. In Terranova, an individual knowingly acted on behalf of a corporation that had been involuntarily dissolved. Id. at 271. The individual was held personally liable for debts incurred by the business while it was dissolved. Id. at 273. In the instant case, there is no evidence that Mr. Kastrenakes ever knowingly acted on behalf of a corporation that had been dissolved.

Furthermore, there is no evidence that Mr. Kastrenakes represented that he was acting on behalf of Pinellas before policy number 3XZ119006-00 was issued. When the policies were issued, Mr. Kastrenakes was acting on behalf of the same corporation which was in good standing with the State of Florida. Therefore, because Specialty did not prove by a

14

preponderance of the evidence that Mr. Kastrenakes knowingly acted on behalf of a corporation that no longer existed because it had been dissolved, he cannot be held personally liable for claims paid by Specialty on Policy Number 3XZ119006-00.

"If a corporation is identified by its old name, the misnomer does not render the transaction invalid." William Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 2456. Courts have refused to hold a Vice President and Treasurer of a corporation personally liable when he signed three judgment notes prepared in his company's old name. <u>Crawford Door Sales Co. of Chicago v. Kowalik</u>, 123 N.E.2d 111 (Ill. App. 2d 1955). The Court in <u>Crawford Door Sales Company of Chicago</u> determined that a "corporation retains its corporate identity when it changes its name," and that where an instrument contains words indicating that a person "signs for, or on behalf, of the principal, or in a representative capacity, he is not liable on the instrument." <u>Id</u>. at 113 (citations omitted). The Court therefore held that when the corporation's Vice President and Treasurer signed the notes in the company's old name the employee was not personally liable. <u>Id</u>.

Similar to <u>Crawford Door Sales Company of Chicago</u>, in the instant case an insurance policy was issued in the company's

old name.  The Corporation continued to operate its rental car business essentially unchanged from the same locations, and Mr. Kastrenakes remained the President and an Officer. Therefore, because only the corporate name had changed and the insurance policy was purchased by the corporation, Mr. Kastrenakes cannot be held personally liable for the deductible reimbursement.

Furthermore, the misnomer of a corporation in a contract "generally will not be treated by the courts as material if the identity of the corporation is reasonably clear or can be ascertained by sufficient evidence." In re Helping Hands, 2008 WL 160204 at *1 (Bankr. E.D. Ky. 2008) (quoting William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations §2444 (2007)).  In addition, courts have also held that when a party was on notice that it was doing business with a corporation, and invoices were paid with corporate checks, the fact that there was a discrepancy in the corporate name on the corporate check is not a sufficient basis to ignore the corporate form and hold an individual personally liable. Schwartz v. Spectratech Ink Co., 568 So. 2d 544, 545 (Fla. 5th DCA 1990).

In the instant case, Mr. Kastrenakes testified that he purchased an insurance policy on behalf of the corporation. Specialty believed that it was doing business with a

16

corporation. The corporation remained in existence and in good standing with the State of Florida throughout the policies' effective dates. The change of corporate name was filed with the Secretary of State. The Corporation paid for the policy with corporate funds. Therefore, not only was Specialty on notice that they were doing business with a corporation, but the fact that there was a misnomer in the contract was not material because the identity of Preferred could easily be ascertained through public records. Thus, the Court finds that Mr. Kastrenakes cannot be held personally liable based on the misnomer on the insurance policy.

## B. U-Save America

The Court concludes that U-Save America is not liable for deductibles paid by Specialty under the short term auto rental policies 3XZ119075-00 and 3XZ119075-01 because U-Save America did not have a relationship with U-Save Florida such that it assumed U-Save Florida's liabilities. In addition, the Court finds that U-Save Florida never assumed liability for the deductibles under either the Asset Purchase Agreement or as successor in interest to Pinellas and Preferred.

Specialty claims that U-Save America is liable for the debts of U-Save Florida because U-Save America was the franchisor of U-Save and controlled its operations. It is well settled that it takes more than "the mere use of

17

franchise logos and related advertisements" or "the provision of routine contractual support services" to establish an agency relationship such that the franchisor can be held liable for the actions of its franchisee. <u>Mobil Oil Corp. v. Bransford</u>, 648 So. 2d 119, 120 (Fla. 1995). To establish an agency relationship, the franchisor must have, by contract, action, or representation, "directly or apparently participated in some substantial way in directing or managing acts of the franchisee." <u>Id.</u>

The preponderance of the evidence shows that U-Save America had no control over the operation of Preferred or U-Save Florida. U-Save America had over 300 other franchisees. McDonnell's unrebutted testimony reflected that U-Save Florida received no preferential treatment or terms; it was treated as one of U-Save America's 300 franchisees. Further, U-Save Florida enjoyed complete autonomy and authority in its business operation. It was controlled by its vice president of operations with virtually no control by anyone else. Clearly, U-Save America did not participate in any substantial way in directing or managing the acts of U-Save Florida. Accordingly, U-Save America is not liable for the debts of U-Save Florida or Preferred.

Specialty also contends that because U-Save America owned all of the stock of U-Save Florida, it is liable as a parent

corporation for the debts of its subsidiary. To impose liability on a parent corporation for the obligations of its subsidiary, the amount of control the parent corporation exercises must be very significant, to the point of controlling the operational functions of the subsidiary. State v. Am. Tobacco Co., 707 So. 2d 851, 855 (Fla. 4th DCA 1998). The uncontested testimony at trial established that U-Save America did not exercise any operational control over U-Save Florida. The fact that the parent company, U-Save America, and its subsidiary have similar corporate officers is insufficient to attach liability to the parent corporation for the debts of the subsidiary. Id. U-Save America is not liable for the debts of U-Save Florida.

Even if U-Save America were responsible for the debts of U-Save Florida, U-Save Florida did not assume the Deductible Insurance Liability Funds. Specialty contends that the insurance deductible funds were intended to be transferred to U-Save Florida as an assumed liability "arising in the regular and ordinary course of the Business between the Balance Sheet Date and the Closing Date." (Pl. Exh. 1, § 1.4(a)(ii)). However, the testimony at trial did not support its contention. U-Save Florida did not intend "ordinary course of business" to include the insurance deductible funds. Instead, that language in the agreement was intended to include only

those regular and ordinary, day-to-day expenses to the business, such as rent payments, electric, water/sewer and other regular overhead expenses. Therefore, U-Save Florida did not assume the insurance deductible liability funds as a liability, and Specialty is precluded from recovering against U-Save America any claims that arose between the Balance Sheet Date of December 31, 2000, and the Closing Date of July 19, 2001, that were paid on or after May 22, 2002.

Alternatively, Specialty contends that the insurance deductible funds were transferred to U-Save America as an asset pursuant to the Agreement's assignment of "all rights under any written or oral contract." (Pl. Exh. 1, § 1.1.1(f)). The Court finds that U-Save America did not assume liability for the deductible payments as a contract right under the agreement for two reasons. First, the uncontested testimony at trial established that the "rights" identified by this provision were, again, the regular and ordinary contractual rights associated with day to day business, like the rights to the phone number and phone book ad, the electric utility deposit and the written premises lease and security deposit. The parties did not intend for this provision to apply to unfunded, potentially unlimited and largely unknown, future deductible payments.

Second, U-Save Florida did not derive any benefit from the insurance polices. U-Save Florida was not a named insured on policy number 3XZ119075-00 or policy number 3XZ119075-01. Further and more importantly, U-Save Florida had its own insurance for its vehicles, which did not contain any deductible provision, and therefore the Specialty policies would have been of no benefit to it.

Specialty claims that U-Save Florida did benefit from the deductible payments because two claims paid by Specialty occurred shortly after the closing date of July 19, 2001. However, Specialty's own checks showing these payments specifically identify the insured as Preferred Rent-A-Car, not U-Save Florida. (Pl. Exh. 4). Clearly, Specialty's unilateral payment of two relatively small amounts (less than $2,500) within weeks of the closing cannot create a legal liability for months of payments before U-Save Florida bought the company. Therefore, the evidence received at trial and the uncontested testimony of the witnesses establishes that neither U-Save Florida nor U-Save America assumed the obligation to repay the deductible payments under the Asset Purchase Agreement.

Importantly, Specialty's contentions also contradict the express language of the Asset Purchase Agreement. (Pl. Exh. 1). Kastrenakes testified that Preferred's rental procedures

required customers to furnish their own insurance or purchase supplemental liability insurance ("SLI") in order to cover the $100,000 deductible. The right to subrogate against the customer's insurance was specifically reserved to Preferred. (Pl. Exh. 1, §§ 3.1.17, 3.1.18). There would be absolutely no reason for Preferred to reserve this right to themselves unless they were responsible to repay the concomitant obligation for deductible payments incurred while it operated the business.

Specialty next asserts that U-Save Florida is a "successor in interest" to Preferred and the asset sale was really a "de facto merger," thus rendering U-Save Florida liable for Preferred's debts. However, the testimony at trial established that the asset purchase by U-Save Florida cannot be viewed as a de facto merger. "To find a de facto merger there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location [and] a continuity of the stockholders . . . ." Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 153-54 (Fla. 4th DCA 1994). However, "[t]he finder of fact may look to any other factors reasonably indicative of commonality or of distinctiveness." 300 Pine Island Assocs., Ltd. v. Steven L. Cohen & Assocs., P.A., 547 So. 2d 255, 256 (Fla. 4th DCA 1989). For example, in Viking Acoustical Corp. v. Monco Sales

Corp., the Florida Fifth District Court of Appeal held that there was no de facto merger between the buyer and seller corporations, in part, because "there is no identity of officers, directors or shareholders." 767 So. 2d 632, 636 (Fla. 5th DCA 2000); see also Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc., 523 So. 2d 740, 742-43 (Fla. 5th DCA 1988) (finding no de facto merger when no commonality of shareholders between corporations).

U-Save Florida was a totally unrelated corporate entity with new officers, directors, and shareholders. After the purchase of Preferred's assets, U-Save Florida did not make any of Preferred's officers and shareholders officers or shareholders of U-Save Florida. (Doc. # 82 at 14). The asset purchase was just that, a classic purchase of specific assets of an ongoing business. The money was paid to Preferred and Preferred's principals did not participate in the ownership of U-Save Florida or U-Save America.

The "elephant in the room" according to McDonnell was vicarious liability for car rental in Florida. At the time of the asset purchase, Preferred was having financial problems and had an unknown number of potentially unlimited vicarious liability claims. U-Save Florida did not want to incur the vicarious liability of Preferred and knew that it would have to materially and dramatically alter Preferred's rental

business to make money. McDonnell testified that U-Save Florida hired its own management team, used its nationally recognized logos, changed the reservation system, used different auto fleets and insurance vendors, changed some employees, and implemented its own business plan. In essence, U-Save Florida changed the fundamental nature of the business so as to clearly separate itself from a formerly unprofitable and insolvent business.

The Court is convinced that the transaction between U-Save Florida and Preferred was not a de facto merger, but merely a limited asset purchase. The purchaser was a different rental car company. The key employees and the car fleets were different. The business plan and daily operations were different. At the time of the asset purchase, U-Save Florida had its own officers, directors and stockholders. So did Preferred. Most importantly, like the purchaser in <u>Viking Acoustical</u>, after the purchase of Preferred's assets, U-Save Florida did not retain any of Preferred's officers and shareholders.

Accordingly, U-Save America is not liable to Specialty for repayment of the deductibles based on the terms of the Asset Purchase Agreement or by operation of law.

## V.    Conclusion

Michael Kastrenakes applied for short term auto rental policy 3XZ119006-00 on behalf of Pinellas Rent-A-Car, Inc., and not in his individual capacity, and therefore he is not individually liable for the deductibles incurred under that policy.  Nor did U-Save America assume liability for those deductibles under the terms of the Asset Purchase Agreement or by operation of law.  The Court finds in favor of Kastrenakes and U-Save America.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)  Defendant U-Save Auto Rental of America, Inc.'s Motion for Judgment on Partial Findings (Doc. # 95) is **DENIED as moot**.

(2)  All claims against Maria Kastrenakes individually, Maria Kastrenakes d/b/a Pinellas Rent-A-Car, Inc., and Maria Kastrenakes d/b/a Preferred Rent-A-Car, Inc. are dismissed with prejudice.

(3)  The Clerk is directed to enter judgment in favor of Michael Kastrenakes individually, Michael Kastrenakes d/b/a Pinellas Rent-A-Car, Inc., Michael Kastrenakes d/b/a Preferred Rent-A-Car, Inc., and U-Save Auto Rental of America, Inc., and close the case.

**DONE** and **ORDERED** in Tampa, Florida, this <u>2nd</u> day of April 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Parties and Counsel of Record